Marie E. Schmidt *vs.* August Schaub, Administrator, (Estate of Caspar Schmidt).

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued April 8th—decided June 21st, 1932.

*Cornelius J. Danaher* and *Israel Poliner,* for the appellant (plaintiff).

*Thomas C. Flood,* with whom was *Carl F. Anderson,* and, on the brief, *Paul S. Maier,* for the appellee (defendant).

Hinman, J. The plaintiff's motion to set aside the verdict was denied November 20th, 1931; judgment

on the verdict was entered on the same date; on December 2d, the plaintiff filed an appeal from the judgment and assigned, only, error in denying the motion. The appellee asserts that the appeal is ineffective because taken from the judgment instead of specifically from the denial of the motion to set aside the verdict. The present Rules for Appellate Procedure (Practice Book, insert, p. 306) provide in § 2 that the party appealing from a decision upon a motion to set aside a verdict shall file his appeal within two weeks from that decision, also that an appeal from a judgment shall be filed within two weeks of rendition thereof. Failure to file an appeal within the time limited after decision on the motion would preclude review of that decision under an appeal from the judgment rendered taken beyond the time limited for an appeal from the decision on the motion. However, when, as in the present instance, judgment is rendered and appeal therefrom taken within two weeks following the decision on the motion, the purposes of the rule are served and its requirements sufficiently answered. Indeed, the appeal, while in form one from the judgment, since it is limited by the assignment of error under it to a review of the decision on the motion, may fairly be regarded as, in effect, an appeal from that decision only.

The complaint is in four counts, the first three alleging unpaid loans of $200, $1000, and $600, respectively, to the defendant's decedent, Caspar Schmidt, presentation of claims therefor to the defendant administrator, and disallowance. The fourth count alleges in substance that in November, 1927, the plaintiff, at the request of Schmidt, relinquished a profitable position in New York City and entered his service at Middletown under an agreement that he would pay her $50 monthly and make a will devising to

her a certain piece of land in Middletown worth $12,-000; that she performed all the services requested by Schmidt to his satisfaction until his death, April 18th, 1931, but he failed to make the monthly payments of $50 each from June 1st, 1929, and no will made by him has been found; that the reasonable value of the services is $12,000, is unpaid, and a claim therefor has been presented and disallowed. The answer denies all the allegations except the appointment of the defendant as administrator and the presentation and disallowance of the claims. The jury returned a verdict for the plaintiff to recover only on the second count ($1065.21) and $975 on the fourth count, which verdict the plaintiff moved to set aside as against the law and the evidence. The only error assigned is the denial of this motion.

Liability for the $1000 loan alleged in the second count was admitted by the defendant on the trial; it was conceded in argument here that the amount of the verdict on the fourth count represented such of the monthly payments as the jury found to have been unpaid, to the exclusion of any allowance on account of the claimed agreement to make additional compensation by will. It is of this omission and of the failure to allow recovery for the $200 and $600 alleged loans under the first and third counts that the appellant complains.

The plaintiff and Caspar Schmidt were cousins. When she came from Germany in 1922 she lived for a time at his house, and thereafter engaged in domestic service at various places. She testified that in November, 1927, she was earning $18 per week in New York, but that Schmidt urged her to come and care for him and his house, stating that while he could afford to pay her only $50 per month, he would also give her by will a lot owned by him on which a lunch cart was

then located, and she consented and did so. It is not disputed that she worked steadily and faithfully, cooking and doing the general housework for Schmidt, caring for several rooms which he rented to lodgers, including washing and cleaning, and even, at times, papering and varnishing.

She testified that the agreement regarding a will was mentioned from time to time, and described with circumstantial detail an occasion two or three years before Schmidt's death when, she claimed, he showed her, read to her, and permitted her to read a will in his handwriting, signed and witnessed, in which he gave her the lunch-cart lot, and that he told her he would put the will in a safe-deposit box of which he had a key, but no will was found after his death. Two other witnesses testified that Schmidt on several occasions made remarks in their hearing to the effect that the plaintiff was to have additional compensation and that he had taken care of her in his will, and one of them stated that, on Good Friday before his death, he declared that he had made his will and left the plaintiff the lot on which the lunch cart was located.

The evidence regarding the $600 loan appears to leave no doubt that the plaintiff parted with the money and that it was used by Schmidt toward the purchase of trucks to be used in an enterprise engaged in by him and Everett Clark. The latter testified to the details of the transaction and that the money was borrowed from the plaintiff by Schmidt and contributed by him to the business. It appeared that Schmidt turned over to the plaintiff a note for $700 payable to her and signed by Clark, but she maintained that all her dealings were with Schmidt, that she made and would have made the loan to him only, and that she did not understand the purport or effect of the note. Although Clark was called as a witness, he

was not asked to explain the giving of the note by him. Proof of the alleged loan of $200 rested upon the uncorroborated testimony of the plaintiff that it was actually made, although a year or two earlier than alleged in the complaint.

Study of the record reveals that the evidence introduced by the plaintiff on all the issues was uncontradicted in any material respect, her own testimony was corroborated by other witnesses as to several important points, and we discover no such contradictions, improbabilities, or other characteristics as may not fairly be attributed to limitations in business experience, education, and mental capabilities, rather than materially affecting her credibility. While we recognize the superior situation of the jury and the trial court regarding determination of questions of fact and the limitations upon a review thereof, also the difficulties confronting representatives of estates in the production of evidence in resisting claims of the nature here involved, we are of the opinion that, upon the evidential situation presented by this record, the motion to set aside the verdict should have been granted. *Skladzien* v. *Sutherland Building & Construction Co.*, 101 Conn. 340, 346, 125 Atl. 614.

The contract alleged in the fourth count being within the statute of frauds, necessarily recovery was sought upon a *quantum meruit* for the reasonable value of the services, proof of which is not satisfied by evidence of the value of the land agreed to be devised. *Downey* v. *Guilfoile,* 96 Conn. 383, 386, 114 Atl. 73; *Hull* v. *Thoms,* 82 Conn. 647, 652, 74 Atl. 925; *Grant* v. *Grant,* 63 Conn. 530, 542, 29 Atl. 15. A supplementary insert in the printed record indicates that a motion for a directed verdict, made by the defendant, was granted by the court as to the fourth count, and it was intimated in argument that in the

charge recovery on *quantum meruit* was precluded because of failure to offer evidence of the value of the services rendered. However, the record does not disclose what direction, if any, was actually given in this respect and the question is not presented by the appeal, which is confined to the ruling on the motion to set aside the verdict, in support of which no claim on this ground is advanced.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.